IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | | |
|---|---|---|
| Kenneth Bond, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16cv138 (TSE/MSN) |
| | ) | |
| Lieutenant Clark, et al., | ) | |
|     Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Kenneth Bond, a Virginia inmate proceeding <u>pro se</u>, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated by employees at Greensville Correctional Center ("GCC").   On September 16, 2016, defendants filed a Motion for Summary Judgment as well as memoranda of law with supporting exhibits.[1]   Dkt. No. 16. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975).   After having been granted an extension of time to respond, plaintiff filed a Motion in Opposition to Granting Summary Judgment.   Dkt. No. 21.   This matter is now ripe for disposition.   For the reasons stated below, defendants' Motion for Summary Judgment must be granted and plaintiff's claims must be dismissed, with prejudice.   In addition, plaintiff's pending Motion for Preservation of Evidence, Dkt. No. 6, will be denied as moot.

**I. Background**

Plaintiff had surgery on his right knee on January 15, 2015.   Dkt. No. 1-3.   He alleges that, on February 14, 2015, as he was leaving his job in GCC's kitchen, each inmate was strip

---

[1] In support of their Motion for Summary Judgment, defendants submitted an affidavit of K. Phillips, Human Rights Advocate at GCC.

searched.   Dkt. No. 1.   Plaintiff states that he informed Officer O'Donnell that he was unable to squat and remove his garments because of the recent knee surgery.   Id.   Then, according to plaintiff, Officer Woods conducted a "thorough hand patdown [sic]" and plaintiff was allowed to leave.   Id.   Plaintiff states that he then explained what had just happened to Lieutenant Clark, who confirmed with Officers O'Donnell and Woods that "everything was okay;" however, plaintiff asserts, Lieutenant Clark then instructed that plaintiff be searched again.   Id.   Plaintiff claims that he informed Lieutenant Clark that he was not refusing instructions to be searched, but rather that squatting was impossible for him because of his knee surgery and the knee brace he wore.   Id.   Lieutenant Clark then allegedly shoved plaintiff against the wall, placed him in handcuffs, and threw him on the floor where Officers O'Donnell and Mills held him down.   Id. Plaintiff asserts that Lieutenant Clark aggressively pulled his clothes off with "total disregard" for plaintiff's knee injury.   Id.   Lieutenant Clark allegedly "continued to twist, bend, enter[,] and unloosen portion[s] of the 'medical brace' in search of contraband."   Id.   Plaintiff states that this caused his "quadricep [sic] tendon" in his right knee to re-tear and "severely severed the Patella Tendon."   Id.   Plaintiff claims that, instead of being taken to the medical unit, Lieutenant Clark instructed Officers O'Donnell and Woods to take plaintiff to "HU-10" where he was "placed on pre-hearing detention."   Id.   Plaintiff states that he was seen by a nurse that day who referred him to the institutional doctor, who he saw three weeks later.   Id.   Plaintiff also states that the institutional doctor informed administrators of the facility that it was "urgent" that plaintiff "be seen by Surgeon MarQueen" because he had missed a follow up appointment. Id.   By the time plaintiff left HU-10 on March 16, 2015, he asserts that he "still hadn't had [his] [] follow up nor [had he been] given a prognosis of the damage inflicted to his 'knee' [sic] by Lieutenant Clark and Officers O'Donnell and Mills."   Id.

Plaintiff states he filed a "complaint" that was sent to Unit Manager Long, but that before a response was given, Sergeant Turner interviewed him on February 20, 2015, and told him that someone from "InterAffairs [sic]" would see him at a later date.   Id.   Plaintiff asserts that Captain Long failed to address the issues he raised in his "complaint," causing plaintiff to file multiple grievances.   Id.   When plaintiff appealed his grievances, he was told that "[his] filing time had elapsed."   Id.   Plaintiff argues that he was not able to get a prognosis of the damage done to his knee until he was allowed to see Surgeon MarQueen on April 8, 2015, and have an MRI performed on May 14, 2015.   Id.   Plaintiff states that Warden Davis knew what happened but never investigated the situation, Investigator Johnson told plaintiff on June 21, 2015 that "the matter would be turned over to Intel Staff" but no one ever came, and Investigators Fields and Turner interviewed plaintiff on September 16, 2015 and told plaintiff "that Mr. Peters would come see [him] ... and would handle the details."   Id.   Plaintiff claims he filed complaints and grievances, but that Mr. Peters never forwarded the evidence to the person investigating plaintiff's matter.   Id.   Plaintiff states he had another surgery on his right knee on August 5, 2015 and underwent rehabilitation from September 8, 2015 to November 12, 2015, starting again on December 4, 2015.   Id.

## II. Standard of Review

### A. Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c).   The moving party bears the burden of proving that judgment on the pleadings is appropriate.   See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party

3

bears the burden of persuasion on all relevant issues).   To meet that burden, the moving party

must demonstrate that no genuine issues of material fact are present for resolution.   Id. at 322.

Once a moving party has met its burden to show that it is entitled to judgment as a matter of law,

the burden then shifts to the non-moving party to point out the specific facts which create disputed

factual issues.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical

Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).   In evaluating a motion for

summary judgment, a district court should consider the evidence in the light most favorable to the

non-moving party and draw all reasonable inferences from those facts in favor of that party.

United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).   Those facts which the moving party

bears the burden of proving are facts which are material. "[T]he substantive law will identify

which facts are material.   Only disputes over facts which might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment."   Anderson, 477

U.S. at 248.   An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt;

wholly speculative assertions will not suffice."   Ross v. Communications Satellite Corp., 759

F.2d 355, 364 (4th Cir. 1985).   Thus, summary judgment is appropriate only where no material

facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule

for the non-moving party.   Matsushita, 475 U.S. at 587.

### B. Exhaustion of Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."   See 42 U.S.C. § 1997e(a); Woodford v. Ngo, 548 U.S. 81, 85 (2006)

("Exhaustion is no longer left to the discretion of the district court, but is mandatory").   The

4

PLRA requires "proper" exhaustion, which demands "compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91, 93.

Proper exhaustion provides prisons the opportunity to correct their errors before being hauled into federal court, reduces the quantity of prisoner suits by either granting relief at the administrative level or persuading prisoners not to further pursue their claim in a federal court, and improves the quality of the prisoner suits that are filed in federal court by creating an administrative record for the court to reference. Id. The benefits of proper exhaustion are only realized if the prison grievance system is given a "fair opportunity to consider the grievance" which will not occur "unless the grievant complies with the system's critical procedural rules." Id. at 95; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As the Supreme Court has noted, if a prisoner could properly exhaust his claims without complying with the procedural rules of the prison's grievance system, a prisoner who did not want to participate in the prison grievance process could avoid the process altogether by simply filing a prison grievance he knew would be dismissed for procedural deficiency. Id. at 96. To prevent this type of abuse, the Fourth Circuit has held that a prisoner cannot exhaust his administrative remedies by failing to follow the required procedural steps, and the proper return of an improperly filed grievance does not serve to exhaust a prisoner's administrative remedies. Moore, 517 F.3d at 725, 729.

In addition, a prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy or effective, Porter v. Nussle, 534 U.S. 516, 524 (2002), and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. Davis v. Stanford, 382 F.Supp.2d 814, 818 (E.D. Va. 2005) (Hilton, J.), aff'd, 127 Fed. App'x 680 (4th Cir. May 10, 2005). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'"

<u>Ross v. Blake</u>, ___ U.S. ___, ___, 136 S. Ct. 1850, 1862 (2016).  Administrative remedies are not

considered to be available "when (despite what regulations or guidance materials may promise) it

operates as a simple dead end—with officers unable or consistently unwilling to provide any relief

to aggrieved inmates," when "some mechanism exists to provide relief, but no ordinary prisoner

can discern or navigate it," or "when prison administrators thwart inmates from taking advantage

of a grievance process through machination, misrepresentation, or intimidation."  <u>Id.</u> at ___, 136

S. Ct. at 1859-60.

### III. Analysis

When, as here, a Virginia prisoner is confined in a state jail, before bringing an action in

federal court he must receive a response to his properly-filed grievance and, if unsatisfactory, he

must pursue it through all available levels of appeal before presenting that claim in federal court.

Specifically, Virginia Department of Corrections Operating Procedure ("VDOC OP") 866.1

requires that "[g]rievances are to be submitted within 30 calendar days from the date of

occurrence/incident or discovery of the occurrence/incident, except in instances beyond the

offender's control."  VDOC OP 866.1(VI)(A)(1)(a).  "Those grievances that do not meet the

filing requirements of [VDOC] OP 866.1 are returned to the offender within [two] working days

from the date of receipt noting the reason for return on the intake section of the grievance form."

Phillips Aff. ¶ 7.

GCC has a record of plaintiff filing the following regular grievances related to the incident

at issue.[2]  The first regular grievance was submitted on March 23, 2015, although it was

mistakenly dated March 23, 2014, and was denied as having not been timely filed.  <u>Id.</u> at Encl. D.

_____

[2] Plaintiff also filed an emergency grievance and several informal complaints; however, VDOC OP requires that a regular grievance be filed within 30 days of the date of the incident in order for a plaintiff properly to exhaust his administrative remedies.

The second regular grievance was filed by plaintiff on May 7, 2015, and it was denied as not providing sufficient information.  Id. at Encl. E.   Plaintiff's third regular grievance was filed on May 15, 2015, and it was denied as being a request for services.  Id. at Encl. F.   The fourth regular grievance filed by plaintiff was submitted on July 12, 2015, and was denied as a request for services.  Id. at Encl. G.   Finally, plaintiff's fifth regular grievance was submitted on August 11, 2015, and was denied as not providing sufficient information.[3]  Id. at Encl. H.   Plaintiff appealed the regular grievances filed on March 23, 2015, May 15, 2015, July 12, 2015, and August 11, 2015, to the Regional Ombudsman.  Id. at Encl. D-H.   Each grievance was returned to plaintiff as having been untimely filed beyond the five day limit for review.  Id.   Because none of plaintiff's regular grievances were processed, defendants' evidence demonstrates that plaintiff failed properly to exhaust his administrative remedies as to his present claim.   Indeed, the record establishes that none of the regular grievances submitted by plaintiff were timely filed, creating an independent basis for dismissing each grievance pursuant to VDOC OP.

Plaintiff's arguments are somewhat difficult to follow; however, he spends a significant amount of time discussing the merits of his claim.   To the extent plaintiff argues against the Motion for Summary Judgment, his assertions can be separated into five general arguments. First, plaintiff argues that he complied with VDOC OP 866.1 because he was unable to file a timely regular grievance due to circumstances beyond his control.   Specifically, plaintiff states that he was unable to file a regular grievance until he knew the extent of his injuries, and he was only able to find out the extent of his injuries after he was seen by the orthopedist.   Because

---

[3] Plaintiff also submitted a regular grievance on November 8, 2015, which was denied as presenting more than one issue and January 4, 2016, which was denied as untimely filed; however, they were not attached to the Phillips affidavit.   For the reasons stated in this Memorandum Opinion, these grievances do not establish that plaintiff properly exhausted his administrative remedies.

employees at GCC prevented plaintiff from seeing the orthopedist until April 8, 2015, plaintiff

asserts that the regular grievance he filed on March 23, 2015 complies with VDOC OP.

Plaintiff's argument must fail because he was not required to wait until he knew the extent of his

injuries to file his regular grievance.    Plaintiff cites to no authority for this proposition. In

addition, he appears to have known that he could file a grievance before learning the extent of his

injuries since he filed an emergency grievance on the day of the incident.    Finally, plaintiff's

argument is belied by the fact that he filed his first regular grievance on March 23, 2015, which

was before he saw the orthopedist and had an MRI on his knee.

   Second, plaintiff cites to several cases to support his argument that there are certain

"special" exceptions to the requirement that he exhaust his administrative remedies; however,

these cases were decided prior to the Supreme Court's decision in Ross which explicitly states

that "[t]he only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust

only such administrative remedies as are 'available.'"    Id. at ____, 136 S. Ct. at 1862.   Third,

plaintiff states that he was interviewed by Investigator Turner, who told plaintiff that "she would

turn [her] report over to the Warden and the Warden would get back with" plaintiff, and that

GCC's administrators were aware of the incident as of the day it occurred.   Plaintiff has not

demonstrated that these facts in any way abrogated his duty to file a regular grievance or that they

made the administrative remedies unavailable.

   Fourth, plaintiff makes the conclusory statements that the "Coordinator at GRCC and the

officer plaintiff was file [sic] charges and suit against are closely [sic] knit, and will do everything

in their control to protect one another" and "the Grievance Coordinator obstructed [plaintiff] from

processing each grievance."   Without more than conclusory allegations, plaintiff has not stated

sufficiently specific facts to create a disputed factual issue.   Finally, petitioner states that his

8

regular grievances were timely filed because his lack of medical care was an ongoing issue rather than a one-time occurrence.   Plaintiff's argument is misplaced because his claim is not based on allegations of deficient medical care; rather, it is a claim based on allegations regarding a single incident of excessive force.

### IV. Immunity

Because plaintiff failed properly to exhaust his claim, defendants' Motion for Summary Judgment will be granted on that basis, and the issue of immunity need not be addressed.

### V. Conclusion

Defendants have established that judgment on the pleadings is appropriate, and plaintiff has not shown that there is a disputed issue of fact as to whether he either properly exhausted his administrative remedies or that the administrative remedies were not available to him. Accordingly, the Motion for Summary Judgment must be granted.   An appropriate Order shall issue.

Entered this ___10th___ day of ___November___ 2016.

Alexandria, Virginia

_____/s/_____
T. S. Ellis, III
United States District Judge